**RELIANCE FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Plaintiff,**

v.

**FEDERAL HOME LOAN BANK BOARD and St. Paul Federal Savings and Loan Association of Chicago, Defendant.**

**No. 75 C 479.**

United States District Court,
N. D. Illinois, E. D.

Feb. 19, 1976.

Henry S. Frank, Laser, Schostok, Kolman & Frank, Chicago, Ill., for plaintiff.

Harold B. Shore, Harvey Simon, John E. Gunther, Washington, D. C., for defendant Federal Home Loan Bank Bd., Charles E. Allen and Daniel J. Goldberg, Washington, D. C., of counsel.

Righeimer, Righeimer & Martin, Chicago, Ill., for defendant St. Paul Federal.

## MEMORANDUM OPINION

MAROVITZ, Senior District Judge.

### Motion to Dismiss

#### I.

In this action, plaintiff Reliance Federal Savings and Loan Association of Chicago ("Reliance") seeks to enjoin the Federal Home Loan Bank Board ("Board") from giving effect to Board Resolution No. 74–1393, which approved the application of St. Paul Federal Savings and Loan Association ("St. Paul"), a competitor of Reliance, to establish and operate a branch office in Hanover Park, Illinois.

From the pleadings and exhibits filed to date it appears that on July 9, 1974, St. Paul filed an application before the Board to establish a branch office in the area of Irving Park and Barrington Roads in Hanover Park, designed to serve the villages of Hanover Park and Streamwood, as well as the southwest corner of Schaumberg. Plaintiff opposed the St. Paul branch on the grounds that its proposed location was within forty-five hundred feet of a branch facility Reliance intended to construct, and for which it had already received approval on March 31, 1974. Accordingly, Reliance filed a written protest to St. Paul's branch application pursuant to 12 C.F.R. § 545.14(g)(3), and an oral argument on the application was scheduled for September 27, 1974, pursuant to 12 C.F.R. § 545.14(h). Following

argument before the Board's Supervisory Agent, the Board adopted Resolution No. 74–1393, dated December 19, 1974, approving St. Paul's branch application. In its Resolution, the Board found, in accordance with the regulatory guidelines of 12 C.F.R. § 545.14(c), that "a necessity exists for such a branch office, that there is a reasonable probability of its usefulness and success, and that it can be established without undue injury to properly conducted existing local thrift and home-financing institutions."

On February 12, 1975, plaintiff instituted this action by filing a four count complaint in which it alleged, inter alia, that the Board violated a duty owed to plaintiff to inform it of St. Paul's pending branch application prior to the Board's approval of Reliance's application, and that the Board owed a duty to Reliance, as a result of approving its branch application, to protect and preserve Reliance's branch area against the intrusion of competitors until such time as Reliance was in full operation and had fully established its branch operation, Count I; that there was a conspiracy between the Board and St. Paul, whereby the Board permitted St. Paul to gain a competitive advantage over Reliance in the branch area, and in return St. Paul agreed to participate in certain supervisory mergers, Count II; that the Board denied Reliance a full adversary hearing on its opposition to the St. Paul branch application, Count III; and that the Board's approval of St. Paul's application contained incorrect findings of fact, was arbitrary, capricious and an abuse of discretion, and violated Reliance's right to procedural due process, Count IV.

On September 17, 1975, Reliance moved to dismiss Counts II, III and IV of its complaint, and sought leave to file a two count amended complaint. By order dated September 18, 1975, we dismissed with prejudice Counts II, III and IV of Reliance's complaint and granted it leave to file its amended complaint instanter.

In its amended complaint, Reliance realleges the substance of Count I of its

original complaint, and adds, as Count II, that the Board had granted approval for a merger between St. Paul and Hanover-Wayne Savings and Loan Association ("Hanover"), "prior to and during the time that St. Paul's application for establishment of a branch facility in Reliance's service area was pending," Amended Complaint ¶ 18, and that the Board's approval of St. Paul's branch application violated the Working Understanding between the Board and the Commissioner of Savings and Loan Associations of the State of Illinois. Amended Complaint ¶ 19.

Pending before us are defendants' motions to dismiss pursuant to Rule 12(b)(6) F.R.Civ.P., for failure to state a claim upon which relief can be granted, or in the alternative for summary judgment pursuant to Rule 56 F.R.Civ.P.

## II.

Among the powers conferred upon the Board by Section 5(a) of the Home Owners' Loan Act of 1933, as amended ("Act"), 12 U.S.C. § 1464(a), is responsibility for the organization, supervision and regulation of federal savings and loan associations. Though the Act itself contains no express provision granting the Board the power to authorize branch offices for federal associations, "every court which has considered this issue has construed the Act as including such a power." *Lyons Savings & Loan Ass'n. v. Federal Home Loan Bank Board*, 377 F.Supp. 11, 16 (N.D.Ill.1974), and cases cited therein. In accordance with this interpretation, the Board has promulgated a comprehensive set of regulations governing applications for and approval of branch banking plans. 12 C.F.R. § 545.14 *et seq.*

Plaintiff's first contention is that the Board breached a duty it had to Reliance to inform it "of the impending St. Paul branch application prior to the grant of authority [for Reliance] to expand into the [same] proposed service area," and

prior to Reliance's commitment of substantial funds for the construction of its branch facility. Amended Complaint ¶ 13. A review of the time factors involved as well as the governing regulatory provisions reveals that the Board could not possibly have conveyed such information to Reliance prior to its March 31, 1974 approval of Reliance's branch application, nor did it have the duty to do so had the information been available at an earlier date.

Reliance's application for a branch facility was filed with the Board on October, 3, 1973, and was approved on March 31, 1974. It was not until more than three months later, on July 9, 1974, that St. Paul filed its application for a branch facility in the same general area. Given these time factors we are hard pressed to understand how it would have been possible for the Board to inform Reliance of St. Paul's application prior to the date of its filing. Further, under the applicable regulations, 12 C.F.R. § 545.14(g)(1), the only burden of notice is placed upon the applicant, who must, upon proper notice from the Board's Supervisory Agent, "publish within 15 days from the date of such advice, in a newspaper printed in the English language and having general circulation in the community to be served by the proposed branch office, a notice of the filing of the application . . . . ." Thereafter, interested parties are afforded up to thirty days to file written protests to the noticed application, 12 C.F.R. § 545.14(g)(3), the applicant is then given up to 15 days to file materials in support of its position, Id., and provisions are made for oral argument between the contestants on the application. 12 C.F.R. § 545.14(h).

Here, St. Paul published notice of its application in the July 24, 1974 edition of the Chicago Tribune, Reliance submitted its written protest on August 23, 1974, and oral argument was held on September 27, 1974. We find that this procedure complied fully with the requirements of the regulations, and that the Board owed no greater duty of no-

tice to Reliance than mandated by the regulations.[1]

## III.

Plaintiff's second contention is that "the Board owed [Reliance] a duty to protect and preserve the [branch] area against the intrusion of new savings and loan associations in competition with Reliance until Reliance was in full operation," and that through Resolution No. 74–1393, by which St. Paul was granted permission to operate a branch in the same area, the Board breached its duty.

■ We have carefully reviewed the language of the Act and searched its legislative history, and are unable to find support for the proposition that a grant of a branch facility by the Board constitutes an exclusive franchise in the branch area which the Board must thereafter protect from future encroachment. The only statutory duty imposed upon the Board, and amplified in the regulations regarding branch facilities, is that the Board is to determine whether "the proposed branch office can be established without undue injury to properly conducted existing local thrift and home-financing institutions" before approving a branch application. 12 C.F.R. § 545.-14(c)(3). (See also, 12 U.S.C. § 1464(a) regarding issuance of charters generally). In Resolution No. 74–1393, approving St. Paul's application, the Board specifically found that:

> a necessity exists for such a branch office, that there is a reasonable probability of its usefulness and success, and that it can be established without undue injury to properly conducted existing local thrift and home-financing institutions.

These findings amply satisfy the requirements of the regulations.

■ Particularly in light of Reliance's written and oral objections to the St. Paul branch office, there can be no doubt that the Board was aware of Reliance's pre-existing branch approval for the same general area, and most likely took that into consideration in determining whether "a necessity exists" for another branch office. We need not delve into the administrative record in this instance, however, for insofar as plaintiff's amended complaint can be construed as challenging the Board's determination as arbitrary, capricious or an abuse of discretion, it must be dismissed, since Count IV of plaintiff's original complaint, Paragraphs 34 and 35, contained precisely such allegations, and were dismissed with prejudice along with Counts II and III by our order dated September 18, 1975.

1. We note parenthetically that neither the Home Owners' Loan Act, *supra*, nor the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.*, nor the Due Process clause of the Fifth Amendment requires the Board to hold hearings of any sort before passing upon branch applications. Thus, "[b]y implication, any hearing granted is gratuitous, and unless plaintiffs complain of the Board's failure to follow whatever procedures it has established, there can be no cause of action against it on procedural grounds." *Lyons Savings & Loan Ass'n., supra,* 377 F.Supp. at 25.

Under the Act, 12 U.S.C. § 1464(a), no procedural requirements are imposed upon the Board in its processing of branch applications. Rather, the statute authorizes the Board to formulate its own rules and regulations, with the sole directive that primary consideration is to be given to "the best practices of local mutual thrift and home-financing institutions in the United States." In that no "hearings on the record" are required under the Act, the hearing provisions of the APA are wholly inapplicable, see, *Duquesne Light Co. v. Environmental Protection Agency,* 481 F.2d 1, 6 (3rd Cir. 1973); *Guaranty Savings & Loan Ass'n. v. Federal Home Loan Bank Board,* 330 F.Supp. 470 (D.D.C.1971), and since the Board's determinations regarding branch applications are "issues committed in the first instance to agency discretion," they are subject to judicial review only upon a showing that the Board's ·action was arbitrary, capricious or an abuse of discretion. See, e. g., *Guaranty Savings & Loan Ass'n., supra;* *Bridgeport Federal Savings & Loan Ass'n. v. Federal Home Loan Bank Board,* 307 F.2d 580 (3rd Cir. 1962), *cert. denied,* 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963); *First National Bank of McKeesport v. First Federal Savings & Loan Ass'n. of Homestead,* 96 U.S.App.D.C. 194, 225 F.2d 33 (1955); *Lyons Savings & Loan Ass'n., supra.*

It is possible, however, that Reliance's reference to the Board's duty herein relates to the Working Understanding referred to in paragraph 19 of the amended complaint. The Working Understanding entered into between the Board and the Commissioner of Savings and Loan Associations of the State of Illinois provided, *inter alia*, that newly chartered associations and associations receiving permission to establish new offices would be afforded a period of time in which to become established before additional offices would be opened in the same area. Plaintiff's argument therefore appears to be that the Board's approval of St. Paul's branch prior to Reliance's becoming established in the same proposed area violated the terms of the Understanding.

From the face of the Understanding, however, it is clear that Reliance's position is without merit. First, since the effective date of the Understanding was January 7, 1975, it was not in effect on December 19, 1974, at the time the Board approved St. Paul's application. Second, the Understanding itself provides that it is a working understanding "between the FHLBB and OCSL, and *shall convey no rights on any applicant*," (emphasis added). Therefore, even if the Understanding was in effect at the time that the Board approved St. Paul's branch application, Reliance would lack standing to invoke its provisions.

## IV.

Plaintiff's third and fourth contentions appear to be that the Board's approval of St. Paul's branch application somehow violated 12 C.F.R. § 545.16(a), regarding a change in an association's home or branch office, Amended Complaint ¶ 15, and that it was improper for the Board to approve a merger between St. Paul and Hanover at the same time that St. Paul's branch application was pending. We dismiss both of these assertions for failure to state a claim upon which relief can be granted.

St. Paul's branch application did not involve a change in either its home or branch office, but was rather an application for a new branch, governed by 12 C.F.R. § 545.14. Accordingly, the provisions of § 545.16(a) are wholly irrelevant to the case at bar.

Regarding the Hanover-St. Paul merger, we find nothing in the regulations, 12 C.F.R. §§ 545.14 and 546, which prohibits the simultaneous processing of merger and branch applications by the same federal association. And as noted in Section III, *supra*, insofar as this contention can be construed as a claim that the merger negated the "necessity" for a St. Paul branch in the proposed service area, thereby rendering the Board's determination erroneous, plaintiff is foreclosed from raising such assertions in light of the dismissal with prejudice of Count IV, ¶ 34, of its original complaint wherein the determination of "necessity" was originally challenged.

## V.

In light of the foregoing, we grant defendants' motions to dismiss for failure to state a claim upon which relief can be granted, and dismiss this action.